UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
JEROME HARTMAN,

        Plaintiff,

  -against-

CARLYLE I. HOLDER; UNIT COUNSELOR
MIELES; CORRECTIONS OFFICER L.
SANDERS; CORRECTIONS OFFICER JOHN
DOE 1; CORRECTIONS OFFICER JOHN DOE
2, collectively in their individual and official
capacities; and UNITED STATES OF
AMERICA,

        Defendants.
-------------------------------------------------------------x

AMENDED COMPLAINT

00-CV-6107 (JG) (JMA)

**Jury Trial Demanded**

Plaintiff Jerome Hartman ("Hartman") by his attorneys, Paul, Weiss, Rifkind, Wharton & Garrison LLP, based on personal knowledge as to himself and upon information and belief as to all other matters, alleges the following:

**NATURE OF THE ACTION**

1. Hartman brings this action to recover damages arising from, among other things, (i) Defendant Carlyle I. Holder's ("Holder"), warden of the Metropolitan Detention Center in Brooklyn, New York ("MDC"), violation of Hartman's rights under the Fifth Amendment to the United States Constitution and Holder's breach of his duty of care; (ii) Defendants Mieles' ("Mieles") and L. Sanders' ("Sanders") failure to protect Hartman from violent attack by other inmates; and (iii) Defendants John Doe 1's ("Doe 1") and John Doe 2's ("Doe 2") sabotage of Hartman's medical care.

2. Prison is an exceedingly dangerous place in which the only protection afforded inmates is that provided by the warden and staff. The MDC warden

jeopardized the physical and mental safety of every pretrial detainee through the distribution of razors to inmates without an adequate program to secure the razors after their use for haircutting or shaving.

3.   Hartman notified MDC staff of a probable assault by other inmates no fewer than four times. The MDC staff failed to heed his warnings or respond to his numerous requests to be moved. Left unprotected, he was attacked by MDC detainees with an MDC-issued razor blade. Left untreated, Hartman now bears the scars of these institutional and individual failures.

## THE PARTIES

4.   Plaintiff Hartman was housed in MDC on June 24, 1998 as a federal pretrial detainee.

5.   Defendant Holder was the warden of MDC on June 24, 1998.

6.   Defendant Mieles was a Unit Counselor in MDC Unit 3 North on June 24, 1998. Defendant Mieles' first name is unknown.

7.   Defendant L. Sanders was a Corrections Officer in MDC on June 24, 1998. Defendant Sanders' first name is unknown.

8.   Defendants Doe 1 and Doe 2 were Corrections Officers in MDC on June 24, 1998. Defendants Doe 1's and Doe 2's identities are unknown.

9.   Defendant United States of America was substituted as a defendant as to claims arising under 28 U.S.C. § 2671, *et seq.*

2

## JURISDICTION AND VENUE

10.     This action arises under *Bivens* v. *Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq*. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims herein occurred in this District.

## BACKGROUND

### The Attack

12.     In March of 1998, Hartman was arrested and placed in custody at MDC pending trial.

13.     In early to mid June of 1998, Hartman began to suspect that inmates Peter Blake ("Blake") and Tyrone Greene ("Greene") were planning to assault him. Hartman's acquaintance, housed in the Unit 4 North, had been assaulted by inmates associated with Blake and Greene. Hartman's belief was also founded on his observation that Greene and Blake were beginning to hoard prison essentials such as cigarettes in anticipation of being isolated in the "hole"—or Special Housing Unit ("SHU")—a common disciplinary measure following physical altercations between inmates.

14.     At approximately 10:30 a.m., on June 24, 1998, Hartman approached Defendant Mieles and requested a transfer out of Unit 3 North and into the adjacent unit. Hartman requested this specific transfer because he knew (i) there were at least three "open beds" in the adjacent unit and (ii) this was the least administratively-burdensome move. When Defendant Mieles asked him why he needed to be moved,

Hartman responded that he did not feel safe in the Unit. Defendant Mieles assured Hartman that he would be moved out of Unit 3 North at the "4:00 count."

15. At approximately 2:30 p.m., on June 24, 1998, Hartman returned to Defendant Mieles to remind him of the threat of assault and the need to be transferred.

16. Knowing that Defendant Mieles' shift ended at 4:00 p.m., Hartman returned at 3:30 p.m., on June 24, 1998, and again asked to be moved out of Unit 3 North. Defendant Mieles replied that it was too late and told Hartman that he would have to wait until the next day.

17. Shortly after 4:00 p.m. on June 24, 1998, Greene approached Hartman and told him that Hartman's acquaintance was a "snitch." Greene reminded Hartman that the so-called "snitch" had been assaulted. Hartman knew that this conversation constituted a veiled threat.

18. After the latest threat, Hartman approached Defendant Sanders, informed her of the ongoing problems with Greene and Blake, and asked, for the fourth time, to be moved out of Unit 3 North.

19. Later that night, shortly after 11:00 p.m., Defendant Sanders exited the large room in which the detainees slept (the "Dormitory"). After Defendant Sanders' absence, the inmates were unsupervised.

20. With the Dormitory unsupervised, Greene approached Hartman's bed and told him that Blake requested his presence. Hartman stood, and as he turned around, Blake attacked him in the back and neck with a razor blade. Hartman tried to

4

run, but Greene and other inmates held him and began punching him. Hartman cried out for the "C.O."—Corrections Officer Sanders—and Blake then cut him across the face with the razor blade. Blake continued stabbing and cutting Hartman. Greene and other assailants repeatedly kicked and punched Hartman as he assumed a defensive position on the floor.

21. Defendant Sanders returned to the room and saw the attack but took no immediate action to stop it. She turned on the lights and left the room, locking the door behind her before sounding the "body alarm."

22. Eventually, MDC staff pulled Greene and Blake off of Hartman. Hartman was removed from the room, covered in blood, and suffering from numerous, serious lacerations on his face, neck, chest, back, and arms and chipped teeth.

23. The razor blade was discovered after the June 24, 1998 assault. It was covered with Hartman's blood and skin.

24. Since the attack, Hartman has endured flashbacks of the incident. He also suffers from nightmares in which Blake is constantly cutting him.

<u>The Inadequate Medical Treatment</u>

25. After the attack, an MDC physician assistant examined Hartman and recommended that he be sent to the hospital.

26. Defendants Doe 1 and Doe 2 accompanied Hartman to the hospital. While travelling with Hartman, Doe 1 and Doe 2 complained that they did not want to spend their night at the hospital supervising him.

5

27. Upon entering the hospital, Hartman heard a nurse inform Doe 1 and Doe 2 that his wounds required stitches.

28. Defendants Doe 1 and Doe 2 were reluctant to supervise Hartman for the amount of time required to stitch his numerous wounds. They decided to terminate the hospital stay and return Hartman to MDC before he received stitches or other care.

29. In prematurely ending Hartman's hospital visit, Defendants Doe 1 and Doe 2 subjected Hartman to a greater risk of scarring and infection.

30. At MDC, Hartman's wounds were cleaned superficially, but the cuts were never stitched.

31. Hartman was placed in the SHU with open, bleeding wounds. His MDC-issued shirt became so bloody from the leaking cuts that he regularly had to request fresh shirts.

### The Lax Razor Policy

32. Holder is responsible for the implementation of United States Bureau of Prison ("BOP") policies at MDC.

33. BOP Program Statement 5230.05.8 states that:

> Where practicable, hair is to be cut in a room or rooms specifically designated for that purpose. A multi-purpose area may be used where this is not practicable. Hair cutting shall be done in an area that permits observation by staff. Equipment must to be [sic] stored securely when not in use. A current inventory of hair cutting equipment shall be maintained.

Furthermore, BOP Program Statement 5230.05.10 states that "[s]having equipment is to be available upon request."

34.  Upon an inmate's admission to MDC, the staff provides him with a "kit" containing a razor, among other items.

35.  MDC does not maintain an inventory of razors distributed to inmates. MDC does not secure razors once they are distributed to inmates. Unit 3 North inmates' kits are not inspected to ensure that an inmate's blade has not been detached from the razor. In fact, razors are left in the inmates' possession despite the rampant use of razor blades in inmate-on-inmate assaults.

36.  MDC staff provided a razor to Blake.

37.  Blake was permitted to use the razor while unobserved by staff.

38.  MDC staff failed to secure the razor after Blake completed any legitimate use of the instrument.

39.  At no time prior to the assault on Hartman did MDC staff inspect or secure the razor possessed by Blake.

40.  The Northeast Regional Office of the Federal Bureau of Prisons denied Hartman's administrative tort claim on May 15, 2000.

7

## FIRST CLAIM FOR RELIEF

### Defendants' Constitutional Violation

41. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 40 above as fully set forth herein.

42. Defendants Mieles and Sanders had actual knowledge that Hartman was in danger of being assaulted by other inmates and failed to protect Hartman.

43. Defendants Doe 1 and Doe 2 knew that Hartman's wounds required hospital care and, in their indifference to his needs, removed him from the hospital in deference to their personal schedules.

44. In failing to protect a federal, pretrial detainee, Defendants' actions and omissions constitute a violation of the Due Process Clause of the Fifth Amendment to the United States Constitution.

45. As a result of Defendants' deliberate indifference to Hartman's well being, Plaintiff has been substantially and irreparably injured.

## SECOND CLAIM FOR RELIEF

### Defendants' Violation of the Federal Tort Claims Act

46. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 40 above as fully set forth herein.

47. Defendant Holder's failure to implement a policy to secure razors distributed to inmates and his failure to prevent razor blades from being used as weapons

was a breach of his duty of reasonable care in providing for the safekeeping, care and protection of persons in the custody of MDC.

48.     By leaving the inmates unsupervised and by not stopping the assault when it was first discovered, Defendant Sanders breached her duty of reasonable care in providing for the safekeeping, care and protection of persons in the custody of MDC.

49.     By reason of the foregoing, Defendants actions and omissions constitute a breach of the duty of care owed by prison officials to federal prisoners under 18 U.S.C. § 4042.

50.     As a result of Defendants' breach, Plaintiff has been substantially and irreparably injured.

WHEREFORE, Plaintiff prays for a judgment against each of the Defendants, jointly and severally, as follows:

1.      An Order entering judgment for Plaintiff and against Defendants on each of Plaintiff's claims for relief;

2.      An award to Plaintiff of damages resulting from Defendants' unlawful conduct, the precise amount to be supplied to the Court upon a trial of the merits, pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and 28 U.S.C. § 2671, *et seq.*;

3.      An award to Plaintiff of his costs and attorneys' fees in this action;

4.      An award to Plaintiff of interest on the foregoing sums; and

5.      Such relief as is just and proper.

9

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all the issues that may be so tried.

DATED:   March 22, 2005

                PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: _____
Julia Tarver (JT-7307)
Joshua Hill (admitted pro hac vice)

1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

*Attorneys for Plaintiff Jerome Hartman*